Filed 7/24/26  P. v. Shaw CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B340024 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. XWESA104553-03) |
| v. | |
| JIBRIL CORY SHAW, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lauren Weis Birnstein, Judge.  Affirmed.

Jeralyn Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Colleen M. Tiedemann, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jibril Shaw of murder and attempted premeditated murder. At his trial, the court admitted Shaw's Instagram records, including posts by users unidentified by their real names. On appeal, Shaw contends that while his own posts were admissible, posts by unidentified users were not because they were unauthenticated and were inadmissible hearsay. We disagree and affirm the judgment.

## BACKGROUND

I. Evidence at trial

Shaw and Keyshawn Isom were jointly tried for the murder of Francisco Calderon and attempted murder of Diego Garcia.

### A. *The shooting on March 4, 2021*

India Williams-Houston began dating Isom in March 2021. He was a Venice Shoreline Crips gang member known as Newborn, and she was a member of another gang. Isom had a silver Chevy Malibu.

On the day of the murder, March 4, 2021, Isom picked up Williams-Houston and her friend Christina Walker in the afternoon, and they went to a party in Oakwood Park. Williams-Houston left the party with Walker, Isom, and Shaw, who was a Venice Shoreline Crips gang member known as Killa Dev. Isom said he did not want Williams-Houston to drive, but Shaw said to let her. Shaw had Williams-Houston drive to a wall "in somebody's hood," and Shaw and Isom tagged the wall.

After Shaw and Isom finished tagging the wall, Williams-Houston drove for a few blocks, and parked. Shaw and Isom got out of the car and ran down the street. Williams-Houston then saw Hispanic men running, and, a few minutes later, Shaw and Isom returned.

Williams-Houston drove back the way they came, but she saw two Hispanic men running, and Shaw told her to stop in the middle of the street. Williams-Houston put on the car's hazard lights. Shaw said, " 'That's him,' " and he and Isom got out of the car again.[1] Shaw then ran down an alley, but Isom stood in front of the car. Shaw passed out of William-Houston's view, and she heard four gunshots. Shaw and Isom returned to the car. Both had guns. Williams-Houston drove them away.

The shooting occurred at about 10:24 p.m. Around that same time, victims Garcia and Calderon were on Slauson, en route to Calderon's apartment. Garcia was walking and Calderon was on a bicycle. Garcia saw a white car with its lights flickering. He then heard gunshots, turned, and saw Shaw. After hearing those first gunshots, Garcia heard seven or eight more.[2] A bullet grazed Garcia's head. Garcia ran to Calderon's house. Not long after, Calderon arrived on his bike but collapsed. Calderon died, having been shot twice.

B.    *The investigation*

Law enforcement officers obtained surveillance footage from the crime scene that showed two people exiting a car, the victims, and muzzle flashes from a gun. Law enforcement officers also recovered 14 bullet casings, all the same caliber, from the crime scene.

---

[1]    Williams-Houston previously testified that Isom made this statement.

[2]    At the preliminary hearing, Garcia testified that he saw Shaw with a gun.

Garcia identified Shaw from a photographic line-up, writing that they "never g[o]t along." Garcia explained that Shaw used to gang bang on Garcia when they were in high school together.

An analysis of a cell phone associated with Isom showed that it travelled to the locations Williams-Houston testified about, including where the shooting occurred.

Williams-Houston testified that Isom's Instagram user name was newbkorn2xtraz. Shaw's Instagram user name was 700_kiilladev2x3k. Law enforcement obtained, via a search warrant, the contents of the Instagram accounts associated with Isom and Shaw, and the social media company's custodian of records produced the records with a certificate of authenticity. The prosecution introduced group chats from these accounts from the day of and after the shooting. On March 4, 2021, at 11:16 p.m., about one hour after the shooting, Shaw messaged the group, "Watch yall ass SL loVe yall bkiitches," followed by, "SL iim the niigka." A gang expert testified that "SL" stands for Shoreline, and that "[w]atch yall ass" meant "expect retaliation[, b]e careful while you're out and about." "[I]im the niigka" meant that " 'I'm the man. I just did something for a status and I feel great. I'm that person.' " Just after midnight on March 5, 2021, Shaw posted, "C1 no more shells my bkad ii LoVe u cuz." A gang expert explained that "shells" refers to bullets.

II.    Verdict and sentence

A jury convicted Shaw of the murder of Calderon (Pen. Code, § 187, subd. (a); count 1) and the attempted premeditated murder of Garcia (*id.*, §§ 664, 187, subd. (a); count 2). The jury

4

also found true allegations as to both counts that Shaw personally used a gun (*id.*, § 12022.5, subd. (a)).[3]

On July 26, 2024, the trial court sentenced Shaw to 25 years to life on count 1, plus four years for the gun enhancement. The trial court imposed a concurrent sentence on count 2.

## DISCUSSION

### I.     General principles

A writing must be authenticated before it may be admitted into evidence.  (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266; *People v. Valdez* (2011) 201 Cal.App.4th 1429, 1434–1435 [authentication applies to social media posts].)  "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law."  (Evid. Code, § 1400.)

Proper authentication of a writing, however, does not overcome other evidentiary rules, such as hearsay.  (*People v. Goldsmith, supra*, 59 Cal.4th at p. 266 [writing must be authenticated *and* not subject to exclusionary rule to be admissible].)  "[A] hearsay statement is one in which a person makes a factual assertion out of court and the proponent seeks to rely on the statement to prove that assertion is true.  Hearsay is generally inadmissible unless it falls under an exception." (*People v. Sanchez* (2016) 63 Cal.4th 665, 674.)

There is an exception to the hearsay rule for business records.  (See, e.g., *People v. Hall* (2024) 104 Cal.App.5th 1077, 1096.)  The business records exception provides, "Evidence of a writing made as a record of an act, condition, or event is not

---

[3]     The jury acquitted Isom of all offenses.

5

made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness." (Evid. Code, § 1271.)

The rule of completeness in Evidence Code section 356 creates another hearsay exception, although it is not labeled as such. (See *People v. Pic'l* (1981) 114 Cal.App.3d 824, 863, fn. 13, disapproved on another point in *People v. Kimble* (1988) 44 Cal.3d 480, 496 & fn. 12.) Evidence Code section 356 thus provides, in relevant part, that "when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence." The rule prevents using selected aspects of an act, declaration, conversation, or writing to create a misleading impression on the subject addressed. (*People v. Clark* (2016) 63 Cal.4th 522, 599–600.) The remainder of the conversation need only have " ' " ' "*some bearing upon, or connection with*, the admission or declaration in evidence." ' " ' " (*Id.* at p. 600; accord, *People v. Vines* (2011) 51 Cal.4th 830, 861, overruled on other grounds in *People v. Hardy* (2018) 5 Cal.5th 56, 104 [courts do not draw narrow lines around exact subject of inquiry].)

We review a trial court's evidentiary rulings for an abuse of discretion. (*People v. Kovacich* (2011) 201 Cal.App.4th 863, 884.)

6

II.  Analysis

Shaw agrees that his Instagram records were authenticated and admissible.  But he disagrees that individual posts or messages of unidentified users were authenticated and admissible.  As we now explain, the trial court properly found that the prosecution authenticated the posts and that they were not inadmissible hearsay.

First, the Instagram records were authenticated.  Detective Crystal Davis testified that she identified accounts associated with Shaw and Isom, obtained a search warrant for them, and uploaded the search warrant to law enforcement's portal for the social media company.  The social media company then forwarded the contents of defendants' Instagram accounts—direct messages, photos, and postings—to law enforcement, with certificates of authenticity.  Further, Williams-Houston said that Shaw was known as Killa Dev, which was similar to the Instagram user name on the account associated with him.  This evidence established that the writing was what the prosecution claimed it to be:  Shaw's Instagram account, which included posts in group chats.

Shaw cites no authority showing that the prosecution had to further "authenticate" posts made in his account by obtaining the actual names of unidentified users.  He instead cites *Griffin v. State* (2011) 419 Md. 343.  In that case, the State sought to introduce what it urged was the murder defendant's girlfriend's MySpace profile with a posting stating that "snitches get stitches."  (*Id.* at p. 348.)  To authenticate the writing, the State relied on a photo of the defendant's girlfriend posted on the account, that the date of birth on the account matched hers, and the threatening post said, "Free Boozy," the defendant's

nickname.  (*Id.* at pp. 350–351.)  Concerned with the possibility that anyone can access a user's profile, the court held that this was insufficient to show that the defendant's girlfriend posted the threatening comment.  (*Id.* at pp. 357–358.)  Two justices dissented, finding that the majority's "technological heebie-jeebies" went to the weight of the evidence, not its admissibility.  (*Id.* at p. 367.)

Even if we agreed with the *Griffin* majority, the case is distinguishable.  As we have said, a detective identified accounts associated with Isom and Shaw, and the social media company produced the records subject to a search warrant and provided certificates of authenticity.  Shaw also stipulated that the writings were business records.  If he wanted to introduce evidence that posts made in the group chat were somehow "fake," then he could have done so.  But that had nothing to do with whether the writings were in Shaw's Instagram account.

Second, Shaw forfeited any hearsay objection below and on appeal.  Ordinarily, failing to object to evidence at trial forfeits an appellate claim that the evidence was improperly admitted.  (Evid. Code, § 353, subd. (a); *People v. Perez* (2020) 9 Cal.5th 1, 7.)  At an initial hearing on the admissibility of the Instagram records, Shaw's counsel said he did not have a "particular objection" to them "other than, if it is a business record, it's still hearsay and unreliable."  The trial court then explained that business records are hearsay, but "[t]hat's why we have the affidavit [of authenticity]" and "[t]hat's why we have [Evidence Code section] 1561."  The trial court added that counsel's objection was valid if he thought this was not Shaw's account, to which counsel said he would "leave it to cross-examination" and "to the weight."  All counsel then *stipulated* to the admission

8

of the Instagram records as business records. Shaw therefore never raised the specific hearsay objection he raises on appeal, that the posts of unidentified users are hearsay, and he instead agreed they are not hearsay under the business records exception.

Also, on appeal, Shaw does not explain *why* any post is hearsay; that is, how it was offered for the truth of the matter. We have no obligation to make arguments for an appellant. (See, e.g., *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [arguments unsupported by reasoned argument and authority are forfeited]; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 [appellate court is not required to examine undeveloped claims or make arguments for parties].)

Moreover, it appears that Shaw withdrew any objection to the posts below. At a hearing about the Instagram records, Isom's counsel objected that messages or posts from users other than Isom and Shaw in the group chat were "confus[ing]." The trial court responded that the posts were admissible under the rule of completeness, explaining that the complete group chat gave context to Shaw's statements. Shaw's counsel then said, "I'll reverse myself." Although not entirely clear, Shaw's counsel thus appears to have agreed that posts in the group chat were admissible under the rule of completeness. Indeed, the trial court instructed the jury it could consider a particular Instagram message as evidence against only the defendant who posted it, but "if you believe it is part of a group chat, you may consider the messages or photos to understand a response by any participant." Shaw did not, below or on appeal, object to this instruction.

9

In any event, the one post Shaw identifies on appeal as inadmissible was instead clearly admissible under the rule of completeness or to give context to Shaw's statement. The day after the shooting, chvmp2x posted in the chat: "If niggas don't play def tomorrow bk ready Saturday to get DPEd." Immediately preceding this post was Shaw's post asking, "Who comiin out here 2xmarro?" And after chvmp2x's post, other users posted similar messages, including Shaw asking, "Sooo who's comiin outside 2xdvy?" The gang expert testified that this chat was about preparing for possible retaliation, being "there in the neighborhood to pretty much hold it down." Chvm2x's post thus gave context to Shaw's posts. (See, e.g., *People v. Davis* (2005) 36 Cal.4th 510, 536 ["out-of-court statement is admissible if offered solely to give context to other admissible hearsay statements"].)

Finally, we reject Shaw's contention that admission of the Instagram group chat messages violated his constitutional rights to a fair trial. The admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial fundamentally unfair. (*People v. Partida* (2005) 37 Cal.4th 428, 439.) As we have said, the trial court did not err by admitting the Instagram records, and therefore Shaw was not deprived of his constitutional rights to a fair trial. (See generally *People v. Albarran* (2007) 149 Cal.App.4th 214, 229–230 [evidence admitted must " ' "be of such quality as necessarily prevents a fair trial" ' "].)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ASHWORTH, J.*

We concur:


ADAMS, Acting P. J.


HANASONO, J.

---

\*      Retired Judge of the El Dorado Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.